BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PILEAS HOLDINGS S.A.,

           Plaintiff,

    v.

HONG KONG QINFA SHIPPING CO.
LTD.,

           Defendant.

08 Civ. CIV 4995

**VERIFIED COMPLAINT**

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff PILEAS HOLDINGS S.A. ("Plaintiff"), as Owner of the M/V CHRISTY M, by its attorneys Blank Rome LLP, complaining of the above-named Defendant HONG KONG QINFA SHIPPING CO. LTD. ("Defendant"), alleges upon information and belief as follows:

1.     This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction.

2.     At all material times, Plaintiff was and now is a foreign company organized and existing under the laws of Liberia and the owner of the Motor Vessel CHRISTY M (the "Vessel").

900200.00001/6642153v.1

3.    At all material times, Defendant was and now is a corporation organized and existing under the laws of China.

## THE BASIC FACTS

4.    Plaintiff chartered its Vessel to defendant pursuant to a charter dated May 7, 2008. Rule B Aff. Ex. 1.

5.    The sum of $150,000 is owing in demurrage incurred for defendant's account at the load port.

6.    Despite repeated request Defendant has refused to pay the demurrage that it owes.

7.    The Charter is subject to English law and London arbitration. This action is expressly filed without prejudice to that right of arbitration.

## COUNT I

## RULE B RELIEF

8.    Plaintiff repeats paragraphs 1 through 7 as if fully set forth herein.

9.    Plaintiff seeks issuance of process of maritime attachment so that it may obtain security for its claims including its English attorneys' fees and arbitrators' fees which are routinely awarded in London arbitration and no security for Plaintiff's claim has been posted by Defendant or anyone acting on its behalf to date.

10.    At best as can now be estimated, Plaintiff expects to recover the following amounts in the arbitration:

| A. | On the principal claim | $150,000 |
|---|---|---|
| B. | Estimated Recoverable English Lawyers and Arbitrators' Fees & "Costs" | $ 50,000 |
| C. | Interest over the course of 3 years at prime rate average of 8% per annum: | $ 36,000 |
| | **TOTAL**: | $236,000 |

11.    Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), but is believed to have, or will have during the pendency of this action, assets in this jurisdiction.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That since Defendant cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Defendant's tangible or intangible property or any other funds held by any garnishee, which are due and owing to Defendant up to the amount of $236,000 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

C.    That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

D.    That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, NY
      May 29, 2008

                                    Respectfully submitted,
                                    BLANK ROME LLP
                                    Attorneys for Plaintiff

By _____
      Jeremy J.O. Harwood (JH 9012)
      405 Lexington Avenue
      New York, NY 10174
      Tel.:  (212) 885-5000

# VERIFICATION

STATE OF NEW YORK    )
                      : ss.:
COUNTY OF NEW YORK   )

Jeremy J.O. Harwood, being duly sworn, deposes and says:

1.     I am a member of the bar of this Honorable Court and of the firm of Blank Rome LLP, attorneys for Plaintiff.

2.     I have read the foregoing Complaint and I believe the contents thereof are true.

3.     The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.     The sources of my information and belief are documents provided to me and statements made to me by representatives of Plaintiff.

_____
Jeremy J.O. Harwood

Sworn to before me this
29th day of May, 2008

_____
Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 20__

BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PILEAS HOLDINGS S.A.,

     Plaintiff,

  v.

HONG KONG QINFA SHIPPING CO.
LTD.,

     Defendant.

08 Civ.

**AFFIDAVIT UNDER
SUPPLEMENTAL RULE B**

STATE OF NEW YORK  )
         : ss.:
COUNTY OF NEW YORK )

   JEREMY J.O. HARWOOD, being duly sworn, deposes and says:

   1.  I am a member of the Bar of this Honorable Court and a member of the

firm of Blank Rome LLP, attorneys for the Plaintiff herein. I am familiar with the

circumstances of the complaint and submit this affidavit in support of Plaintiff's request

for the issuance of process of maritime attachment and garnishment of the property of

defendant HONG KONG QINFA SHIPPING CO. LTD., a company organized and

existing under the laws of China, pursuant to Rule B of the Supplemental Rules for

Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2.    The defendant is not incorporated or registered to do business in this State.

3.    Under my supervision, my office did a search of the New York State Secretary of State, Division of Corporations, Transportation Tickler (2008 edition), telephone assistance in New York City, and the internet Yellow Pages.

4.    In our search, we did not find any listing or reference to defendant in this district or state.

5.    In the circumstances, I believe the defendants cannot be "found" within this district.

6.    I attach as Exhibit 1 hereto a copy of the Charter dated May 7, 2008.



Jeremy J.O. Harwood

Sworn to before me this
29th day of May, 2008

Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 2008

# EXHIBIT 1

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL
UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)
(To be used for trades for which no approved form is in force)
CODE NAME: " G E N C O N"                                    Part I

Adopted by:
the Documentary Committee of the General
Council of British Shipping, London
and the Documentary Committee of the Japan
Shipping Exchange, Inc., Tokyo

Copyright, published by the Baltic
and International Maritime
Council (BIMCO), Copenhagen

| 1. Shipbroker | |
|---|---|
| EUROCHARTS S.A. | |
| AETHRION CENTER , 40 AG. KONSTANTINOU STREET, | |
| 15124 MAROUSSI, . ATHENS , HELLAS | |

**Case 1:08-cv-04995-VM    Document 1    Filed 05/30/2008    Page 9 of 22**

| | |
|---|---|
| SINO-CEAN RIZHAO | **2. Place and date** |
| 4TH FLOOR OF SHPG BUILDING, HAIBIN ROAD 2 | |
| RIZHAO, SHANDONG, CHINA | GUANGZHOU,  07  MAY 2008 |
| **3. Owers/Place of business (Cl. 1)** | **4. Charterers/Place of business (Cl. 1)** |
| | |
| PILEAS HOLDING S.A. | HONG KONG QINFA SHIPPING Co Ltd. |
| 80 BROAD STREET | NO. 22F, SOUTH TOWER, POLY INTERNATIONAL PLAZA. |
| MONROVIA, LIBERIA | NO.1 PAZHOU EAST ROAD, HAIZHU DISTRICT, |
| | GUANGZHOU, GUANGDONG , P.R.CHINA |
| **5. Vessel's name (Cl. 1)** | **6. GRT/NRT (Cl. 1)** |
| "M/V CHRISTY M" | SEE CLAUSE 40 |
| **7. Deadweight cargo carrying capacity in tons (abt) (Cl. 1)** | **8. Present position (Cl. 1)** |
| SEE CLAUSE 40 | |
| | VESSEL IS AT DANANG ANCHORAGE WAITING FOR ORDERS. |
| **9. Expected ready to load (abt) (Cl. 1)** | |
| 7 MAY 2008 | |
| **10. Loading port or place (Cl. 1)** | **11. Discharging port or place (Cl. 1)** |
| | |
| 1 SAFE PORT 1 SAFE BERTH 1 SAFE ANCHORAGE ALWAYS | 1 SAFE PORT 1 SAFE BERTH ALWAYS AFLOAT ALWAYS |
| AFLOAT ALWAYS ACCESSIBLE CAM PHA, VIETNAM | ACCESSIBLE GUANGZHOU, CHINA |

| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and  complete  cargo not agreed state "part cargo") (Cl. 1) |
|---|
| 20,000 METRIC TONS STEAM COAL IN BULK 10% MORE OR LESS OWNERS OPTION STOWAGE FACTOR. ABOUT 1.2 CUBIC METERS |

| **13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 1)** | **14. Freight payment (state currency and method of payment; also beneficiary and bank account ) (Cl. 4)** |
|---|---|
| FREIGHT U.S.$ 17.25 .- PER METRIC TON FREE IN, OUT, | |
| TRIMMED BASIS 1/1 | IN US DOLLARS BY BANK TRANSFER AS PER CLAUSE 30 |
| **15. State if vessel's cargo handling gear shall not be used (Cl. 5)** | **16. Laytime (if separate laytime for load and disch. is agreed, fill in a) and b).** |
| - | If total laytime for load, and disch., fill in c) only) (Cl.6) |
| **17. Shippers/Place of business (Cl.6)** | **a) Laytime for loading** |
| - | - |
| **18. Agents (loading) (Cl.6)** | **b) Laytime for discharging** |
| SEE CLAUSE 33 | - |
| **19. Agents (discharging) (Cl.6)** | **c) Total laytime for loading and discharging** |
| SEE CLAUSE 33 | |
| | 7 TOTAL WEATHER WORKING DAYS OF 24 CONSECUTIVE |
| | HOURS SUNDAYS HOLIDAYS INCLUDED |
| | LAYTIME NON REVESIBLE |
| **20. Demurrage rate (loading and discharging) (Cl.7)** | **21. Cancelling date (Cl.09)** |
| SEE CLAUSE 23 | |
| | 12 MAY 2008 |
| | **22. General Average to be adjusted at (Cl.12)** |
| | LONDON, ENGLISH LAW |
| **23. Freight Tax (state if for the Owners' account (Cl.13(C))** | **24. Brokerage commission and to whom payable (Cl.15)** |
| - | |
| **25. Law and Arbitration (state 19 (a), 19 (b) of 19 (c) of Cl.19; of** | 2.5% DEDUCTED FROM OCEAN FREIGHT TO SINO-OCEAN |
| 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall | |
| apply) (Cl.19) | 1.25% TO EUROCHART S.A, ATHENS. |
| ENGLISH LAW – ARBITRATION IN LONDON | |
| **(a) State maximum amount for small claims/shortened arbitration (Cl.19)** | **26. Additional clauses covering special provisions, if agreed** |
| | Clauses 20-49, both included, shall be deemed to be fully |
| USD 50.000 | Incorporated in this Charter Party |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall
include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II
to the extent of such conflict

| Signature (Owners)  FOR AND ON BEHALF OF THE | Signature (Charterers) |
|---|---|
| OWNERS | |
| | |
| ODYSEA CARRIERS SA | |

1. It is agreed between Owners of the Vessel ... of the Document 16. 1
named in Box 5, of the GT/NT indicated in Box 6 and carrying about the 2
number of metric tons of deadweight capacity all told on summer loadline 3
stated in Box 7, now in position as stated in Box 8 and expected ready to load 4
under this Charter about the date indicated in Box 9, and the party 5
mentioned as Charterers in Box 4 that, 6
The said vessel shall, as soon as her prior commitments have been completed, 7
proceed to the loading port (s) or place (s) stated in Box 10 or so near 8
thereto as she may safely get and lie always afloat, and there load a full and 9
complete cargo (if shipment of deck cargo agreed same to be at Charterers' 10
risk) as stated in Box 12 which the Charterers bind themselves to ship, and 11

being so loaded the vessel shall proceed to the discharging port or place 12
stated in Box 11 as ordered on signing Bills of Lading or so near thereto as 13
she may safely get and lie always afloat and there deliver the cargo. 14

**2.Owners' Responsibility Clause** 15
Owners are to be responsible for loss of or damage to the goods or for 16
delay in delivery of the goods only in case the loss, damage or delay has 17
been caused by personal want of due diligence on the part of the Owners or 18
their Manager to make the vessel in all respects seaworthy and to secure that 19
she is properly manned, equipped and supplied or by the personal act or default of 20
the Owners or their Manager. 21

And the Owners are responsible for loss, damage or delay arising from any 22
other cause whatsoever, even from the neglect or default of the Master or crew 23
or some other person employed by the Owners on board or ashore for whose 24
acts they would, but for this clause, be responsible or from unseaworthiness 25
of the vessel on loading or commencement of the voyage or at any time 26
whatsoever. 27

**3.Deviation Clause** 28
The vessel has liberty to call at any port or ports in any order, for any purpose, 29
to sail without pilots, to tow and/or assist vessels in all situations, and also to 30
deviate for the purpose of saving life and/ or property. 31

**4.** Payment of Freight (See Clause 30) 32
~~(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the~~ 33
~~intaken quantity of cargo.~~ 34
~~(b) Prepaid. If according to Box 13 freight is to be paid on shipment, it shall be~~ 35
~~Deemed earned and non-returnable, Vessel and/or cargo lost or not lost.~~ 36
~~Neither the Owners nor their agents shall be required to sign or endorse bills of~~ 37
~~Lading whereby freight prepaid unless the freight due to the Owners has~~ 38
~~actually been paid.~~ 39
~~(c) On delivery. If according to Box 13 freight, or part thereof, is payable at~~ 40
~~Destination it shall not be deemed earned until the cargo is thus delivered.~~ 41
~~Notwithstanding the provisions under (a), if freight or part thereof is payable on~~ 42
~~delivery of the cargo the Charterers shall have the option of paying the freight~~ 43
~~on delivered weight/quantity provided such option is declared before breaking~~ 44
~~bulk and the weight/quantity can be ascertained by official weighing machine,~~ 45
~~joint draft survey or tally.~~ 46

~~Cash for Vessel's ordinary disbursements at the port of loading to be advanced~~ 47
~~by the Charterers, if required, at highest current rate of exchange, subject to~~ 48
~~two (2) per cent to cover insurance and other expenses.~~ 49

**5.** Loading/Discharging 50
*(a)Costs Risks* 51
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, 52
tallied, lashed and/ or secured and taken from the holds and discharged by the 53
Charterers, free of any risk, liability and expense whatsoever to the Owners. 54
~~The Charterers shall provided and lay all dunnage material as required for the~~ 55
~~Proper stowage and protection of the cargo on board, the Owners allowing the~~ 56
~~use of all dunnage available on board. The Charterers shall be responsible for~~ 57
~~and pay the cost of removing their dunnage after discharge of the cargo under~~ 58
~~this Charter Party and time to count until dunnage has been removed.~~ 59
*(b) Cargo Handling Gear* 60
Unless the Vessel is gearless or unless it has been agreed between the parties 61
that the Vessel's gear shall not be used and stated as such in Box 15, the 62
Owners shall throughout the duration of loading/discharging give free use of 63
the Vessel's cargo handling great and of sufficient motive power to operate all 64
such cargo handling gear. All such equipment to be in good working order 65
Unless caused by negligence of the stevedores, time lost by breakdown of the 66
Vessel's cargo handling gear or motive power – pro rata the total number of 67
Cranes\winches required at that time for the loading/discharging of cargo under 68
this Charter Party – shall not count as laytime or time on demurrage. 69
~~On request the Owners shall provide free of charge cranemen/winchmen from~~ 70
~~the crew to operate the Vessel's cargo handling gear, unless local regulations~~ 70
~~Prohibit this, in which latter event shore labourers shall be for the account of the~~ 72
~~Charterers. Cranemen/winchmen shall be under the Charterers' risk and~~ 73
~~Responsibility and as stevedores to be deemed as their servants but shall~~ 74
~~always work under the supervision of the Master.~~ 75
*(c) Stevedore Damage* (See clause 21) 76
~~The Charterers shall b responsible for damage (beyong ordinary wear and~~ 77
~~Tear) to any part of the Vessel caused by Stevedores; Such damage shall be~~ 78
~~Notified as soon as reasonable possible by the Master to the Charterers or their~~ 79
~~agents and to their Stevedores, failing which the Charterers shall not be held~~ 80
~~responsible. The Master shall endeavour to obtain the Stevedores' written~~ 81
~~acknowledgement of liability.~~ 82
~~The Charterers are obliged to repair any stevedore damage prior to completion~~ 83
~~of the voyage, but must repair stevedore damage affecting the Vessel's~~ 84
~~Seaworthiness or class before the Vessel sails from the port where such~~ 85
~~Damage was caused or found. All additional expenses incurred shall be for the~~ 86
~~Account of the Charterers and any time lost shall be for the account of and shall~~ 87
~~be paid to the Owners by the Charterers at the demurrage rate.~~ 88

~~* (a) Separate laytime for loading and discharging~~ 90
~~The cargo shall be loaded within the number of running days/hours as~~ 91
~~indicated in Box 16, weather permitting , Sundays and holidays excepted,~~ 92
~~unless used, in which event time actually used shall count.~~ 93
~~The cargo shall be discharged within the number of running days/hours as~~ 94
~~indicated in Box 16, weather permitting, Sundays and holidays excepted,~~ 95
~~unless used in which event time actually used shall count.~~ 96
~~* (b) Total laytime for loading and discharging~~ 97
~~The cargo shall be loaded and discharged within the number of total running~~ 98
~~days/hours as indicated in Box 16, weather permitting SHINC-Sundays and~~ 99
~~holidays~~ 100
~~excepted, unless used, in which event time actually used shall count.~~ 101
~~(c) Commencement of laytime (loading and discharging) SEE CLAUSE 46~~ 102
~~Laytime for loading and discharging shall commence at 13.00 hours, if notice of~~ 103
~~readiness is given up to and including 12:00 hours, and at 06:00hours next~~ 104
~~working day if notice given during office hours after 12:00 hours. Notice of~~ 105
~~readiness at loading port to be given to the Shippers named in Box 17 or if not~~ 106
~~Named, to the Charterers or their agents named in Box 18. Notice of readiness~~ 107
~~at the discharging port to be given to the Receivers or, if not known, to the~~ 108
~~Charterers or their agents named in Box 19.~~ 109
~~If the loading/discharging berth is not available on the Vessel's arrival at or off~~ 110
~~the port of loading/discharging, the Vessel shall be entitled to give notice of~~ 111
~~Readiness within ordinary office hours on arrival there, whether in free pratique~~ 112
~~or not, whether customs cleared or not. Laytime or time on demurrage shall~~ 113
~~then count as if she were in berth and in all respects ready for loading/~~ 114
~~Discharging provided that the Master warrants that she is in fact ready in all~~ 115
~~respects. Time used in moving from the place of waiting to the loading/~~ 116
~~discharging berth shall not count as laytime.~~ 117
~~If, after inspection, the Vessel is found not to be ready in all respects to load/~~ 118
~~Discharge time lost after the discovery thereof until the Vessel is again ready to~~ 119
~~Load/discharge shall not count as laytime.~~ 120
~~Time used before commencement of laytime shall count~~ 121

* *Indicate alternative (a) or (b) as agreed in Box 16.* 121

**7.** Demurrage (See Clause 23) 122
Demurrage at the loading and discharging port is payable by the Charterers at 123
the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for 124
any part of a day. Demurrage shall fall due day by day and shall by payable 125
upon receipt of the Owners' invoice. 126
~~In the event the demurrage is not paid in accordance with the above, the~~ 127
~~Owners shall give the Charterers 96 running hours written notice to rectify the~~ 128
~~failure. If demurrage is not paid at the expiration of this time limit and if the~~ 129
~~vessel is in or at the loading port, the Owners are entitled at any time to~~ 130
~~terminate the Charter Party and claim damages for any losses causes thereby.~~ 131

**8.** Lien Clause 132
Owners shall have a lien on the cargo and on all sub-freights payable in 133
respect of the cargo, for freight, deadfreight, demurrage, claims for damages 134
and for all other amounts due under this Charter Party including costs of 135
recovering same. 136

**9.** Cancelling Clause 137
(a) Should the vessel not be ready to load (whether in berth or not) on the 138
canceling date indicated in Box 21, the Charterers shall have the option of 139
cancelling this Charter Party. 140
(b) Should the Owners anticipate that, despite the exercise of due diligence, 141
the vessel will not be ready to load by the canceling date, the shall notify the 142
Charterers thereof without delay stating the expected date of the Vessel's 143
readiness to load and asking whether the Charterers will exercise their option 144
of canceling the Charter Party, or agree to a new canceling date. 145
Such option must be declared by the Charterers within 48 running hours after 146
the receipt of the Owners' notice. If the Charterers do not exercise their option 147
of canceling, then this Charter Party shall be deemed to be amended such that 148
the seventh day after the new readiness date stated in the Owners' notification 149
to the Charterers shall be the new canceling date. 150
The provisions of sub-clause (b) of this Clause shall operate only once, and in 151
case of the Vessel's further delay, the Charterers shall have the option of 152
canceling the Charter Party as per sub-clause (a) of this Clause. 153

**10.** Bills of Lading 154
Bills of Lading shall be presented and signed by the Master as per the 155
"Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter 156
Party, or by the Owners' agents provided written authority has been given by 157
Owners to the agents, a copy of which is to be furnished to the Charterers. The 158
Charterers shall indemnify the Owners against all consequences or liabilities 159
that may arise from the signing of bills of lading as presented to the extent that 160
the terms or contents of such bills of lading impose or result in the imposition of 161
more onerous liabilities upon the Owners than those assumed by the Owners 162
under this Charter Party. 163

**11.** Both-to-Blame Collision Clause 164
If the Vessel comes into collision with another vessel as a result of the 165
negligence of the other vessel and any act, neglect or default of the Master, 166
Mariner, Pilot or the servants of the Owners in the navigation or in the 167
management of the Vessel, the owners of the cargo carries hereunder will 168
indemnify the Owners against all loss or liability to the other or non-carrying 169
vessel or her owners in so far as such loss or liability represents loss of, or 170
damages to, or any claim whatsoever of the owners of said cargo, paid or 171
payable by the other or non-carrying vessel or her owners to the owners of said 172
cargo and set-off, recouped or recovered by the other or non-carrying vessel 173

The foregoing provisions shall also apply where the owners, operators or those          175
in charge of any vessel or vessels other than, or in addition to, the          176
colliding vessels or objects are at fault in respect of a collision or contact.          177

## 12. General Average

General average shall be adjusted in London unless otherwise agreed in Box.22          178
according to York-Antwerp Rules1994 and any subsequent modification          179
thereof. Proprietors of cargo to pay the cargo's share in the general expenses          180
even if same have been necessitated through neglect or default of the Owners'          181
servants (see clause 2.)          182
If General Average is to be adjusted in accordance with the law and practice of          183
the United States of America, the following Clause shall apply: "In the event of          184
accident, danger, damage or disaster before or after the commencement of the          185
voyage, resulting from any cause whatsoever, whether due to negligence or          186
not, for which, or for the consequence of which, the Owners are not responsible,          187
by statute, contract or otherwise, the cargo shippers, consignees or the          188
owners of the cargo shall contribute with the Owners in General Average          189
to the payment of any sacrifices, losses or expenses of a General Average          190
nature that may be made or incurred an shall pay salvage and special charges          191
incurred in respect of the cargo. If a saving vessel is owned or operated by the          192
Owners, salvage shall be paid for as fully as if the said salving vessel or vessels          193
belonged to strangers. Such deposit as the Owners, or their agents, may deem          194
sufficient to cover the estimated contribution of the goods and any salvage and          195
special charges thereon shall, if required, be made by the cargo, shippers,          196
consignees or owners of the goods to the Owners before delivery.          197

## 13. Taxes and Dues Clause

(a) *On Vessel*   The Owners shall pay all dues, charges and taxes customarily          199
levied on the Vessel, howsoever the amount thereof may be assessed.          200
(b) *On cargo*   The Charterers shall pay all dues, charge, duties and taxes          201
customarily levied on the cargo, howsoever the amount thereof may be          202
assessed.          203
(c) *On freight*   Unless otherwise agreed in Box.23, taxes levied on the freight          205
shall be for the Charterers' account.          206

## 14. Agency (See Clause 33)

~~In every case the Owners shall appoint their own Agent both at the port of~~          208
~~loading and the port of discharge.~~          209

## 15. Brokerage

A brokerage commission at the rate stated in Box.24 on the freight, dead-freight          211
and demurrage earned is due to the party mentioned in Box.24.          212
~~In case of non-execution at least 1/3 of the brokerage on the estimated amount~~          213
~~of freight to be paid the party responsible for such non-execution to the~~          214
~~Brokers as indemnity for the latter's expenses and work. In case of more~~          215
~~voyages the amount of indemnity to be agreed.~~          216

## 16. General Strike Clause

(a) If there is a strike or lock-out affecting or preventing the actual loading of the          217
cargo, or any part of it, when vessel is ready to proceed from her last port or          218
at any time during the voyage to the port or ports of loading or after her arrival          219
there, the Master or the Owners may ask the Charterers to declare, that they          220
agree to reckon the laydays as if there were no strike or lock-out. Unless the          221
Charterers have given such declaration in writing (by telegram, if necessary)          222
within 24 hours, Owners shall have the option of cancelling this Charter.          223
Party. If part cargo has already been loaded, Owners must proceed with          224
same, (freight payable on loaded quantity only plus deadfreight) having liberty          225
to complete with          226
other cargo on the way for their own account.          227
(b) If there is strike or lock-out affecting or preventing the actual discharging          228
of the cargo on or after vessel's arrival at or off port of discharge and same          229
has not been so.ed within 48 hours. The Charterers shall have the option of          230
keeping vessel waiting until such strike or lock-out is at an end against          231
paying half demurrage after expiration of the time provided for discharging          232
until the strike or lock-out terminated and thereafter full demurrage shall be          233
payable until the completion of discharging, or if ordering the Vessel to a safe          234
port where she can safely discharge without risk of being detained by strike or          235
lock-out. Such orders to be given within 48 hours after the Master or the          236
Owners have given notice to Charterers of the strike or lock-out affecting          237
the discharge. On delivery of the cargo at such port, all conditions of this          238
Charter party and of the Bill of Lading shall apply and the vessel shall receive          239
the same freight as if she had discharged at the original port of destination,          240
except that if the distance of the sub- stituted port exceeds 100 nautical miles,          241
the freight on the cargo delivered at the substituted port to be increased in          242
proportion          243
(c) Except for the obligations described above, neither the Charterers nor the          244
Owners shall be responsible for the consequences of any strikes of lock-outs          245
preventing or affecting the actual loading or discharging of the cargo.          246

## 17. War Risks ("Voywar 1993") (See Clause 44)

~~1)          For the purpose of this Clause, the words:~~          248
~~(a) "Owners" shall include the shipowners, bareboat charterers,~~          249
~~disponent owners, managers or other operators who are charged with~~          250
~~management of the Vessel, and the Master; and~~          251
~~(b) "War Risks" shall include any war (whether actual or threatened), act of~~          252
~~war, civil war, hostilities, revolution, rebellion, civil commotion, warlike~~          253
~~operations, the laying of mines (whether actual or reported), acts of piracy,~~          254
~~acts of terrorists, acts of hostility or malicious damage, blockades~~          255
~~(whether imposed against all vessels or imposed selectively against~~          256
~~vessels of certain flags or ownership, or against certain cargoes or crews~~          257
~~or otherwise howsoever), by any person, body, terrorist or political group,~~          258
~~or the Government of any state whatsoever, which, in the reasonable~~          259
~~judgement of the Master and/or the Owners, may be dangerous or are~~          260

~~(2)   If at any time before the Vessel commences loading, it appears then, in the~~          263
~~reasonable judgement of the Master and/or the Owners, performance of~~          264
~~the Contract of Carriage, or any part of it, may expose, or is likely to expose,~~          265
~~the Vessel, her cargo, crew or other persons on board the Vessel to War~~          266
~~Risks, the Owners may give notice to the Charterers cancelling this~~          267
~~Contract of Carriage, or may refuse to perform such part of it as may~~          268
~~expose, or may be likely to expose, the Vessel, her cargo, crew or other~~          269
~~persons on board the Vessel to War Risks; provided always that if this~~          270
~~Contract of Carriage provides that loading or discharging is to take place~~          271
~~within a range of ports, and at the port or ports nominated by the Charterers~~          272
~~the Vessel, her cargo, crew, or other persons onboard the Vessel may be~~          273
~~exposed, or may be likely to be exposed to War Risks, the Owners shall~~          274
~~first require the Charterers to nominate any other safe port which lies~~          275
~~within the range for loading or discharging, and may only cancel this~~          276
~~Contract of Carriage if the Charterers shall not have nominated such safe~~          277
~~port or ports within 48 hours of receipt of notice of such requirement.~~          278

~~(3)   The Owners shall not be required to continue to load cargo for any voyage,~~          279
~~or to sign Bills of Lading for any port or place, or to proceed or continue on~~          280
~~any voyage, or on any part thereof, or to proceed through any canal or~~          281
~~waterway, or to proceed to or remain at any Port or place whatsoever,~~          282
~~where it appears, either after the loading of the cargo commences, or at~~          283
~~any stage of the voyage thereafter before the discharge of the cargo is~~          284
~~completed, that, in the reasonable judgement of the Master and/or the~~          285
~~Owners, the Vessel, her cargo (or any part thereof), crew or other persons~~          286
~~on board the Vessel (or any one or more of them) may be, or are likely to be,~~          287
~~exposed to War Risks. If it should so appear, the Owners may by notice~~          288
~~request the Charterers to nominate a safe port for the discharge of the~~          289
~~cargo or any part thereof, and if within 48 hours of the receipt of such~~          290
~~notice, the Charterers shall not have nominated such a port, the Owners~~          291
~~may discharge the cargo at any safe port of their choice (including the port~~          292
~~of loading) in complete fulfilment of the Contract of Carriage. The Owners~~          293
~~shall be entitled to recover from the Charterers the extra expenses of such~~          294
~~discharge and, if the discharge takes place at any port other than the~~          295
~~loading port, to receive the full freight as though the cargo had been~~          296
~~carried to the discharging port and, if the extra distance exceeds 100 miles,~~          297
~~to additional freight which shall be the same percentage of the freight~~          298
~~contracted for as the percentage which the extra distance represents to~~          299
~~the distance of the normal and customary route, the Owners having a lien~~          300
~~on the cargo for such expenses and freight.~~          301
~~(4) If at any stage of the voyage after the loading of the cargo commences, it~~          302
~~appears that, in the reasonable judgement of the Master and/or the~~          303
~~Owners, the Vessel, her cargo, crew or other persons on board the Vessel~~          304
~~may be, or are likely to be, exposed to War Risks on any part of the route~~          305
~~(including any canal or waterway) which is normally and customarily used~~          306
~~in a voyage of the nature contracted for, and there is another longer route~~          307
~~to the discharging port, the Owners shall give notice to the Charterers that~~          308
~~this route will be taken. In this event the Owners shall be entitled, if the total~~          309
~~extra distance exceeds 100 miles, to additional freight which shall be the~~          310
~~same percentage of the freight contracted for as the percentage which the~~          311
~~extra distance represents to the distance of the normal and customary~~          312
~~route.~~          313
~~5) The Vessel shall have liberty:~~          314
~~a)  to comply with all orders, directions, recommendations or advice as to~~          315
~~departure, arrival, routes, sailing in convoy, ports of call, stoppages,~~          316
~~destinations, discharge of cargo, delivery or in any way whatsoever which~~          317
~~are given by the Government of the Nation under whose flag the vessel~~          318
~~sails, or other Government to whose laws the Owners are subject or any~~          319
~~other Government which so requires, or any body or group acting with the~~          320
~~power to compel compliance with their orders or directions;~~          321
~~(b) to comply with the orders, directions or recommendations of any war~~          322
~~risks underwriters who have the authority to give the same under the terms~~          323
~~of the war risks insurance;~~          324
~~(c) to comply with the terms of any resolution of the Security Council of the~~          325
~~United Nations, any directives of the European Community, the effective~~          326
~~orders of any other Supranational body which has the right to issue and~~          327
~~give the same, and with national laws aimed at enforcing the same to which~~          328
~~the Owners are subject, and to obey the orders and directions of those who~~          329
~~are charged with their enforcement~~          330
~~(d) to discharge at any other port any cargo or part thereof which may~~          331
~~render the Vessel liable to confiscation as a contraband carrier;~~          332
~~(e) to call at any other port to change the crew or any part thereof or other~~          333
~~persons on board the Vessel when there is reason to believe that they may~~          334
~~be subject to internment, imprisonment or other sanctions;~~          335
~~(f) where cargo has not been loaded or has been discharged by the~~          336
~~Owners under any provisions of this Clause, to load other cargo for the~~          337
~~Owners' own benefit and carry it to any other port or ports whatsoever,~~          338
~~whether backwards or forwards or in a contrary direction to the ordinary or~~          339
~~customary route~~          340
~~6) If in compliance with any of the provisions of Sub-clauses (2) to (5) of this~~          341
~~Clause anything is done or not done, such shall not be deemed to be a~~          342
~~deviation but shall be considered as due fulfilment of the Contract of~~          343
~~Carriage.~~          344

## 18. General Ice Clause

### Port of loading

(a) In the event of the loading port being inaccessible by reason of ice when the          346
vessel is ready to proceed from her last port or at any time during the voyage or          348
on vessel's arrival or in case frost sets in after vessel's arrival, the          349
Captain for fear of being frozen in is at liberty to leave without cargo, and this          350
Charter shall be null and void.          351
~~(b) If during loading the Captain, for fear of vessel being frozen in deems it~~          352

Owners' benefit for any port or ports including port of discharge. Any part 355
cargo thus loaded under this Clause is to be discharged at destination 356
vessel's expense but against payment of freight, provided that no extra 357
expenses be thereby caused to the Receivers, freight being paid on quantity 358
delivered (in proportion if lumpsum), all other conditions as per Charter 359
Party. 360
(c) In case of more than one loading port, and if one or more of the ports are 361
closed by ice, the Captain or Owners to be at liberty either to load the part 362
cargo at the open port and fill up elsewhere for their own account as under 363
section (b) or to declare the Charter Party null and void unless Charterers 364
agree to load full cargo at the open port. 365

*Port of discharge* 366
(a) Should ice prevent vessel from reaching port of discharge the 367
Charterers shall have the option of keeping the vessel waiting until the re- 368
opening of navigation and paying demurrage, or of ordering the vessel to a safe 369
and immediately accessible port where she can safely discharge without risk of 370
detention by ice. Such orders to be given within 48 hours after Captain or the 371
Owners have given notice to Charterers of the impossibility of reaching port 372
of destination. 373
(b) If during discharging the Captain for fear of vessel being frozen in deems 374
it advisable to leave, he has liberty to do so with what cargo he has on board and 375
to proceed to the nearest accessible port where she can safely discharge. 376
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall 377
apply and vessel shall receive the same freight as if she had discharged at 378
the original port of destination, except that if the distance of the substituted port 379
exceeds 100 nautical miles, the freight on the cargo delivered at the substituted 380
port to be increased in proportion. 381

**19. Law and Arbitration** 382
(a) This Charter Party shall be governed by and construed in accordance with 383
English law and any dispute arising out of this Charter Party shall be referred to 384
arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or 385
any statutory modification or re-enactment thereof for the time being in force. 386

Unless the parties agree upon a sole arbitrator, one arbitrator shall be 387
appointed by each party and the arbitrators so appointed shall appoint a third 388
arbitrator, the decision of the three-man tribunal thus constituted or any two of 389
them, shall be final. On the receipt by one party of the nomination in writing of 390
the other party's arbitrator, that party shall appoint their arbitrator within 391
fourteen days, failing which the decision of the single arbitrator appointed shall 392
be final. 393
For disputes where the total amount claimed by either party does not exceed 394
the amount stated in Box.25** the arbitration shall be conducted in accordance 395
with the Small Claims Procedure of the London Maritime Arbitrators 396
Assosiaton. 397

* (b) This Charter Party shall be governed by and construed in accordance with 398
Title 9 of the United States Code and the Maritime Law of the United States and 399
should any dispute arise out of this Charter Party, the matter in dispute shall be 400
referred to three persons at New York, one to be appointed by each of the 401
parties hereto, and the third by the two so chosen; their decision or that of any 102
two of them shall be final, and for purpose of enforcing any award, this 403
agreement may be made a rule of the Court. The proceedings shall be 404
conducted in accordance with the rules of the Society of Maritime Arbitrators, 405
Inc. 406
For disputes where the total amount claimed by either party does not exceed 407
the amount stated in Box.25** the arbitration shall be conducted in accordance 408
with the Shorted Arbitration Procedure of the Society of Maritime Arbitrators, 409
Inc. 410

* (c) Any dispute arising out of this Charter Party shall be referred to arbitration 411
at the place indicated in Box.25, subject to the procedures applicable there. The 412
laws of the place indicated in Box.25 shall govern this Charter Party. 413
(d) If Box.25 in Part I is not filled in, sub-clause (a) of this Clause shall apply. 414
* (a), (b) and (c) are alternatives; indicate alternative agreed in Box.25 415
** Where no figure is supplied in Box.25 in Part I, this provision only shall be void 416
but the other provisions of the Clause shall have full force and remain in effect. 417



## ADDITIONAL CLAUSES TO MV "CHRISTY M"
## – ACCOUNT QINFA SHIPPING
## CHARTER PARTY DATED 07 MAY 2008

### Clause 20
Law and arbitration to be settled in London and English Law to apply.

### Clause 21
Stevedores in loading port although appointed by charterers/shippers or their agents, always to be under the direct control of the master. All claims for damage allegedly caused by stevedores at loading port, Master to notify Stevedores in writing within 24 hours after occurrence. The master shall endeavour to obtain the Stevedores' written acknowledgement of liability.

Settlement of claims to be arranged between Owners and Stevedores directly, but charterers to render their assistance and to remain ultimate responsible case no settlement between Owners and Stevedores can be reached.

### Clause 22

If vessel is delaying at present discharging port and cannot meet the canceling the Owners will advise the charterers and charterers within 24 hours to declare whether they will give a new canceling date as requested by the Owners or will cancel the fixture.

### Clause 23

Demurrage USD 17,000 half dispatch working time saved both ends guarantee and paid by charterers both ends. Payment of demurrage at loading port as per clause 30. At loading port surf days to count as laytime.
Demurrage at discharging port to be paid within 7 banking days after completion of discharge and after surrender to charterers owners final freight statement supported by statement of facts/time sheet.

### Clause 24

The vessel is warranted to be bulk carrier and in every way seaworthy and fitted for loading/ carrying the fixed cargo in bulk without any need for bagging/strapping/securing.

### Clause 25

Ship to supply light as may onboard for work at Owners expense if required by charterers and the ship is to provide at all times safe and secure means of access between ship and ashore at discharging port.



1

## ADDITIONAL CLAUSES TO MV "CHRISTY M"
## – ACCOUNT QINFA SHIPPING
## CHARTER PARTY DATED 07 MAY 2008

### Clause 26

Vessel's holds to be clean and dry and free of remaining foreign cargo free from smell and fully suitable to load the related cargo at independent inspectors' satisfaction. In case of a dispute, an independent surveyor shall decide the vessel's readiness to load. Costs are for party proven wrong. If the rejection of Notice of Readiness is undisputed or confirmed by the aforesaid independent surveyor, the lay time will stop counting from the time of inspection until the vessel has validly tendered again when ready.

### Clause 27

Overtime if any to be for account of the party ordering same, but officers and crew overtime to be for Owners account.

### Clause 28

Opening and closing of the hatches to, including removing at the beams to be performed by crew, at Owners' time, risk and expense. Provided allowed by local regulations as otherwise same to be done by shore people at charterers' time/expense.

### Clause 29

Charterers have the option to use a normal bobcat in vessel's hold up to vessel's maximum tank top strength.

### Clause 30

Full freight plus demurrages to be paid to owners nominated bank account on completion of loading and prior signing/ releasing bills of ladings market freight payable as per c/p. Freight deemed earned on completion of loading discount less and non returnable vessel and or cargo lost or not lost.

### Clause 31

Owners warrant that vessel's crew is and remain employed whilst trading under this Charter Party in full compliance with all terms and conditions proved accepted by the Bona Fide agreement acceptable to ITF or other acceptable agreements in the loading and discharging port and that the vessel is allowed to load/ discharge at the ports mentioned in this Charter Party and is not blacklisted by local authorities or unions for whatever reasons. If the vessel due to failure to comply to said regulations, is detained, time not to count even if vessel is already on demurrage and any damages due to delay of shipment to be for Owners' account.



2

## ADDITIONAL CLAUSES TO MV "CHRISTY M"
## – ACCOUNT QINFA SHIPPING
## CHARTER PARTY DATED 07 MAY 2008

### Clause 32

Should the vessel be delayed beyond the expected date of loading, the Owners to inform Charterers as soon as this delay becomes known to them.

### Clause 33

Charterers' agents (as below) both ends provided competitive. Maximum disbursment accounts for Owner's account usd 20000 per port.Any amount in excess to be paid by Charterers directly to port agents.

**Loading Port**

COMPANY: "VINACOMIN SHIPPING AGENCY J. S. Co ( VICOSA )"

PIC: Luu Hai Tuyen
TEL :"84  33 866288
        84  33 866112"
FAX : 84  33 866137
MOB : 84 91 2 593 780
EMAIL: vicosa.qn@hn.vnn.vn

**Discharging Port**

GUANGZHOU UNITED INTERNATIONAL OCEAN SHIPPING AGENCY LTD

PIC: MS WANG
TEL:020-82290182 020-82153761
FAX:020-82290206 020-82297248
MOB: 13312890593 / 13312893230
EMAIL: uniscogz@vip.163.com

### Clause 34

Owners to give notice on fixing only.

### Clause 35

Master or Owners to inform Charterers immediately when the ship is making for a port or distress and to telegraph her arrival and departure there, stating the circumstances which led to calling at such a port of distress.



## ADDITIONAL CLAUSES TO MV "CHRISTY M"
## – ACCOUNT QINFA SHIPPING
## CHARTER PARTY DATED 07 MAY 2008

### Clause 36

During the voyage and after arrival at the port of discharge Master/Owners to inform Charterers immediately when they have reasons to believe that any damage to the cargo have occurred or when circumstances have arisen which may have led to possible damages to the cargo.

### Clause 37

Charterers have the option to disinfect the holds before loading for their account and risk, and lay time to count.

### Clause 38

Vessel's hatch covers must be water tight

### Clause 39

This fixture to be kept strictly private and confidential.

### Clause 40

Vessel's description:

```
M/V CHRISTY M
==============
BULK CARRIER PANAMA 1983
25237 MT DWT ON 10.49 MS
LOA/BEAM 184.60/22.80 MS
GRAIN 29,313 CM3 CUBIC B/DOWN:
3909,0/3334,0/5173,5/3339,3/5173,5/3339,3/5044,7 CM3
7 HO/HA HATCHSIZES NO 1 12.95 X 9.98 M NO 2-4-6 10.40 X 11.42
NO 3-5-7 12.80 X 11.42 MS CRANES 2 X 15 TS 2 X 25 TS
SPEED/CONSUMPTION BASIS MAX WINDS BEAUFORT 4 AND DOUGLAS SEA
STATE 3 ABOUT 12
KNOTS ON ABOUT 25 MTS IFO 180 CST RME 25 + 2.5 MTS MDO (DMB)
AT SEA IDLE 1 MT
IFO+2MT MDO - GEAR WORKING 1 MT IFO+3MT MDO
VESSEL CONSUMES MDO MANEUVERING/NAVIGATING IN RESTRICTED
WATERS/CANAL/RIVERS
ALL DETAILS ABOUT AND WOG
```



### ADDITIONAL CLAUSES TO MV "CHRISTY M"
### – ACCOUNT QINFA SHIPPING
### CHARTER PARTY DATED 07 MAY 2008

#### Clause 41

Owners bankers:

EFG EUROBANK S.A.

83 AKTI MIAOULI & FLESSA STR BRANCH
PIRAEUS GREECE
SWIFT ADDRESS : EFGBGRAA

FAVOUR :PILEAS HOLDING S.A.
IBAN   :GR7002600290000251200277002

U.S.DOLLAR CORRESPONDENT:DEUTSCHE BANK TRUST COMPANY
AMERICAS
              NEW YORK, N.Y.
              SWIFT ADDRESS : BKTRUS33
              OR
              CITIBANK N.A.
              NEW YORK, N.Y.
              SWIFT ADDRESS : CITIUS33

#### Clause 42

Charterers guarantee no any restrictions for this vessel both ends.

#### Clause 43

Any taxes/dues wharfages on freight/ cargo to be for charterers account.
The vessel to be free of any extra insurance.

#### Clause 44

#### BIMCO War Risks Clause for Voyage Chartering, 2004 (Code Name: VOYWAR 2004)

(a)  For the purpose of this Clause. the words:

(i)  "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii)  "War Risks" shall include any actual, threatened or reported:



5

## ADDITIONAL CLAUSES TO MV "CHRISTY M"
## – ACCOUNT QINFA SHIPPING
## CHARTER PARTY DATED 07 MAY 2008

### Clause 44 (continued)

War; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or

malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the

Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(c) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a



6

## ADDITIONAL CLAUSES TO MV "CHRISTY M"
### – ACCOUNT QINFA SHIPPING
### CHARTER PARTY DATED 07 MAY 2008

### Clause 44 (continued)

port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners

shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the

extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(d) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(e) (i) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(ii) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, or in order to fulfil the Owners' obligation under this Contract of Carriage, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners within 14 days after receipt of the Owners' invoice. If the Vessel discharges all of her cargo within an area subject to additional premiums as herein set forth, the Charterers shall reimburse the Owners for the actual additional premiums paid which may accrue from completion of discharge until the Vessel leaves such area or areas referred to



7

## ADDITIONAL CLAUSES TO MV "CHRISTY M"
## – ACCOUNT QINFA SHIPPING
## CHARTER PARTY DATED 07 MAY 2008

### Clause 44 (continued)

above. The Owners shall leave the area as soon as possible after completion of discharge.

(f) The Vessel shall have liberty:-

(i) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the

Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(ii) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(vi) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(g) If in compliance with any of the provisions of sub-clauses (b) to (f) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.



8

## ADDITIONAL CLAUSES TO MV "CHRISTY M"
## – ACCOUNT QINFA SHIPPING
## CHARTER PARTY DATED 07 MAY 2008

### Clause 45

Lightering/ lighterage if any to be for charterers account/ arrangement.
Bimco Double Banking Clause to apply (see below)

### BIMCO DOUBLE BANKING CLAUSE

(a)  The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the Vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order

(b)  such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

(b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(c) Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the Vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

(d) The Owners shall be entitled to insure any deductible under the Vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the Vessel's Underwriters and/or the cost of insuring any deductible under the Vessel's hull policy.

(e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

### Clause 46

Notice of Readiness to be tendered even by cable/ telex/ email whether in berth or not, whether in port or not, whether in free pratique or not, whether cleared customs or not, Sundays holidays included and laytime to commence 12 hours after Notice or Readiness tendered unless used in which case actual time used to count.

### Clause 47

In case of non-available of original bills of ladings at discharging port, owners/master agrees to discharge cargo to customs custody against charterers single letter of

9

## ADDITIONAL CLAUSES TO MV "CHRISTY M"
## – ACCOUNT QINFA SHIPPING
## CHARTER PARTY DATED 07 MAY 2008

### Clause 48 (continued)

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code/MTSA.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code/MTSA shall count as laytime or time on demurrage, unless such measures result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers.

(d) Notwithstanding anything to the contrary provided in this Charter Party, any costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

### Clause 49

Shore crane to be for charterers account/ arrangement at discharging port. Owners to allow charterers/ shippers to use vessel's gears for loading freely. Owners further guarantee vessel's cranes safe working load 2x15 n 2x25mts. If vessel's gears not workable during loading, time actually lost to be for Owner's account.